UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TYRELL MIKAL ROBINSON,

                  Plaintiff,                Case No. 2:25-cv-148

v.                                   Honorable Robert J. Jonker

T. KIENETZ et al.,

                  Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The

events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues the following LMF staff in their personal capacities: Captain T. Kienetz, Assistant Deputy Wardens P. Hubble, Resident Unit Manager J. Naeyaert, Warden Douglas Tasson, and Prison Counselor Unknown Bewick. (Am. Compl., ECF No. 6, PageID.19.)

Plaintiff alleges that, on November 3, 2024, Plaintiff was in Maple Unit when he was attacked by another prisoner. (*Id.*, PageID.20.) Both he and the other prisoner were placed in handcuffs and escorted to segregation. (*Id.*)

On November 12, 2024, while Plaintiff was waiting to be interviewed by Defendant Naeyaert, Plaintiff spoke with Defendant Kienetz and told Defendant Kienetz that it was the "seventh business day" since the November 3, 2024, incident and Plaintiff had not heard anything about his "situation." (*Id.*) Defendant Kienetz told Plaintiff that Plaintiff would need to be interviewed by Defendant Naeyaert before Defendant Kienetz could make any decisions. (*Id.*) Plaintiff asked to be transferred or placed in Pine Unit because of the attack, and Defendant Kienetz told Plaintiff that he would see what he could do. (*Id.*)

That same day, Defendant Naeyaert interviewed Plaintiff regarding the November 3, 2024, incident and asked, "What was that about?" (*Id.*) Plaintiff told Defendant Naeyaert that he did not know and asked to be transferred or placed in Pine Unit for a "fresh start." (*Id.*) Plaintiff was moved to Pine Unit. (*Id.*)

On November 28, 2024, Plaintiff was involved in a fight with two other prisoners and was given 10 days' detention. (*Id.*) Plaintiff was scheduled to be released from detention on December 15, 2024. (*Id.*) On December 10, 2024, Plaintiff spoke with Defendant Kienetz and asked to be

transferred or sent back to Pine Unit. (*Id.*) Defendant Kienetz told Plaintiff that he would see what he could do. (*Id.*)

On December 15, 2024, Plaintiff was returned to Maple Unit. (*Id.*, PageID.21.) Within the first few weeks of returning to Maple Unit, Plaintiff began to hear of potential threats to his safety. (*Id.*) On December 28, 2024, Plaintiff placed a kite in the prison counselor's mailbox that stated, "I have a few questions regarding my parole guidelines and concerns regarding my safety." (*Id.*) Defendant Bewick called Plaintiff into her office and Plaintiff expressed his fears of being attacked again in Maple Unit and asked to be moved to Pine Unit. (*Id.*) Defendant Bewick gave Plaintiff instructions to write to Defendants Tasson or Hubble because she was unable to authorize the move without their approval. (*Id.*) Plaintiff did as he was told. (*Id.*) He sent kites to Defendants Tasson and Hubble that day but did not receive a response. (*Id.*) Plaintiff then filed a grievance explaining that his life was in danger and that Defendants did not make any attempt to keep him safe. (*Id.*, PageId.22.) Plaintiff also did not receive a response to his grievance. (*Id.*)

On February 14, 2025, Plaintiff was assaulted by a "random prisoner," and placed in segregation. (*Id.*) Plaintiff again spoke with Defendant Kienetz and asked to be placed in Pine Unit; however, Plaintiff was moved back to Maple Unit where the prisoner who assaulted Plaintiff was also housed. (*Id.*) Plaintiff wrote another grievance against Defendant Kienetz. (*Id.*, PageID.23.)

On April 11, 2025, Plaintiff was assaulted by a different "random prisoner" while carrying his breakfast tray. (*Id.*)

Plaintiff alleges that LMF staff failed to process Plaintiff's grievances and indicates that he is suing Defendants for "failure to protect." (*Id.*, PageID.23.) As relief for the events described in

the amended complaint, Plaintiff seeks $1 million in compensatory damages against each Defendant. (*Id.*, PageID.25.)

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

4

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Eighth Amendment Failure to Protect Claims

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). For a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

Here, Plaintiff alleges that he was first assaulted in Maple Unit on November 3, 2024. (Am. Compl., ECF No. 6, PageID.20.) There is no indication that any Defendant was aware of facts that would suggest that Plaintiff was at risk for that first attack. Therefore, Plaintiff fails to state any legally cognizable § 1983 claim premised upon that incident.

Second, Plaintiff alleges that he personally requested to be placed in Pine Unit prior to the November 29, 2024, incident, which occurred in the Pine Unit. (*Id.*) He again does not allege any facts that would suggest that any Defendant was aware that Plaintiff faced a risk to his safety in Pine Unit. Indeed, Plaintiff personally requested to be placed in Pine Unit, presumably viewing it

as a safe housing option. Accordingly, to the extent alleged, Plaintiff fails to state a failure to protect claim based upon the November 29, 2024, attack.

Third, Plaintiff alleges that he was attacked by "another random prisoner" on February 14, 2025, after returning to Maple Unit. (*Id.*, PageID.22.) Plaintiff does not allege that this attack bore any connection to the first November 3, 2024, incident and, while this is the same unit where the initial attack occurred, Plaintiff does not allege any facts that would suggest that Plaintiff's prior attacker was in the unit on this occasion He alleges only that, prior to the incident of February 14, 2025, Plaintiff informed Defendants Bewick, Tasson, and Hubble of "concerns regarding [his] safety" and "fear of being attacked again," and requested to be moved out of Maple Unit to Pine Unit. (*Id.*, PageID.21.) He alleges that he wrote a grievance concerning the lack of action by Defendants Bewick, Tasson, Hubble, and Kienetz, and Naeyaert, but did not receive response. (*Id.*)

To bring a failure to protect claim concerning this incident, as with the others, Plaintiff would need to allege facts that plausibly suggest that Defendants were subjectively aware of and consciously disregarded "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Here, Plaintiff does not provide the Court with any facts that would support his concerns or fears regarding his safety. Vague, unspecified threats to safety and "general concern[s]" do not support an Eighth Amendment claim even when the plaintiff is eventually attacked. *See Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001); *see also Bradshaw v. Anucci*, No. 9:23-cv-0602, 2023 WL 4744735, at *18 (N.D.N.Y. July 24, 2023) ("[A]n inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." (internal citations omitted)). Even if Plaintiff had received specific threats, he does not allege that he

conveyed those specific threats to Defendants or that Defendants Bewick, Tasson, Hubble, and Kienetz, and Naeyaert were otherwise aware that Plaintiff faced a specific threat to his safety prior to the February 14, 2025, attack by a "random prisoner." Accordingly, the Court will dismiss Plaintiff's failure to protect claim to the extent premised upon the February 14, 2025, attack.

Finally, Plaintiff points to an "assault[]" that took place during breakfast on April 11, 2025. (Am. Compl., ECF No. 6, PageID.23.) He claims that prior to this incident, he requested to be transferred or placed in Pine Unit, where he was previously assaulted, but that Defendants Naeyaert and Kienetz each played a role in placing Plaintiff back in the Maple Unit where the first assault took place, with the prisoner who had attacked him on November 3, 2024. (*Id.*) Plaintiff alleges that he wrote a grievance indicating that Defendant Kienetz generally "failed to protect [him] from a harmful environment that's detrimental to [his] safety" but does not allege that Defendants were aware that the original attacker posed an ongoing threat to Plaintiff or that Plaintiff otherwise faced a "substantial risk of serious harm." Indeed, Plaintiff was not attacked by his original attacker. He was instead attacked by "another random prisoner for the third time." (*Id.*) There are no facts to suggest that anyone, including Plaintiff, was aware of any threat posed by this "random prisoner." Even taking Plaintiff's complaint as true, Plaintiff does not allege that any named Defendant was deliberately indifferent to Plaintiff's safety. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants in their entirety.

### B.    Claims Regarding Plaintiff's Use of the Grievance Process

Plaintiff alleges that Defendants did not respond to Plaintiff's grievances. To the extent that he seeks to bring claims under § 1983 regarding his use of the grievance process, these allegations do not give rise to any constitutional claim.

Plaintiff has no due process right to file a prison grievance. Various courts have held that there exists no constitutionally protected due process right to an effective prison grievance

procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim,* 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the alleged conduct by Defendants and others could not have deprived Plaintiff of due process.

Additionally, Plaintiff's right to petition government is not violated by any failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, any actions by Defendants related to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977), *overruled in other part by Lewis v. Casey*, 518 U.S. 343 (1996). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims regarding his use of the grievance process.

## <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1), *see McGore*,

9

114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the full appellate filing fee in one lump sum.

        A judgment consistent with this opinion will be entered.


Dated:    <u>August 25, 2025</u>             <u>/s/ Robert J. Jonker</u>
                                            Robert J. Jonker
                                            United States District Judge